UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------X

In re:

|                                    |                          |
|------------------------------------|--------------------------|
|                                    | Chapter 11               |
| A.C.E. ELEVATOR CO., INC.,         | Case No. 04 B 17994 (RDD)|

Debtor.
--------------------------------------------------------------**X**

|                                                              |                          |
|--------------------------------------------------------------|--------------------------|
| A.C.E. ELEVATOR CO., INC., as Debtor-in-Possession, and AMERICAN MANUFACTURERS MUTUAL INSURANCE COMPANY, as Intervener, | Adv. Pro. No. 05-1158 (RDD) |

Plaintiffs.

v.

LOCAL NO. 1, INTERNATIONAL UNION OF
ELEVATOR CONSTRUCTORS, et al.,

Defendants.
--------------------------------------------------------------**X**

## ORDER GRANTING IN PART AND DENYING IN PART MOTIONS FOR SUMMARY JUDGMENT

Upon the motions of Plaintiff and Defendants for summary judgment, or, in the alternative, the Plaintiff's Motion for Order Striking Defendants' Answer and/or Precluding Use of Certain Testimony and Related Documents Pursuant to Federal Rule of Civil Procedure Rule 37(b)(2)(B) in favor of Plaintiffs and against the Defendants; and the Court having held a hearing on the respective motions on March 17, 2009; and the Court having considered the parties supplemental briefing after oral argument; and, after review and due deliberation on the record on the respective motions, the Court having issued a Modified Bench Ruling dated May 22, 2009, a copy of which is attached as

Exhibit <u>A</u> hereto; and counsel for the Plaintiff having been instructed to submit a proposed order consistent with the Court's ruling and having done so on September 25, 2009 and having subsequently represented to the Court that the delay in submitting the proposed order was occasioned by the parties' efforts to agree upon the terms of the proposed order, which are materially reflected herein; and good cause appearing, it is

**ORDERED, ADJUDGED and DECREED as follows:**

1) The summary judgment motion of Defendants Trustees of Elevator Constructors Union Local No. 1 Annuity & 401(K) Fund, Trustees of Elevator Constructors Union Local No. 1 Education and Apprentice Fund is granted.

2) Defendants' summary judgment motion is granted as to the Third Amended Complaint's claim for breach of fiduciary duty.

3) Plaintiff's motion for sanctions under Fed.R.Civ.P. 37 and 26, incorporated by Fed.R.Bankr.P. 7037 and 7026, is denied without prejudice; provided that Defendants shall promptly cure the defect in their identification and preparation of a witness under Fed.R.Civ.P. 30(b)(6) and Plaintiff's time to depose such witness is extended to forty-five days after such witness is identified.

4) In all other respects the motions of Plaintiff and Defendants for summary judgment are denied.

5) Any party desiring in the future to file a motion for summary judgment may do so in accordance with LBR 7056-1.

6)        The parties shall schedule a pre-trial conference to be held on or about

December 15, 2009

Dated: New York, New York
      October 7, 2009

/s/Robert D. Drain _____
HON. ROBERT D. DRAIN
UNITED STATES BANKRUPTCY JUDGE

```
1    ----------------------------------------X
     In Re:                             :   04-17994
2                                       :
       A.C.E. ELEVATOR CONSTRUCTION, INC.  :   One Bowling Green
3                                       :   New York, New York
                                        :
4                  Debtor.              :   May 22, 2009
     ----------------------------------------X
5    A.C.E. ELEVATOR CONSTRUCTION, INC.,   :   05-01158(rdd)
                    Plaintiff,          :
6          and                          :
                                        :
7    AMERICAN MANUFACTURER'S MUTUAL       :
     INSURANCE COMPANY,                  :
8                                       :
                   Intervenor,          :
9                                       :
                   v.                   :
10                                      :
     ELEVATOR CONSTRUCTORS UNION LOCAL    :
11   NO. 1., et al.,                    :
                                        :
12                 Defendants.          :
     ----------------------------------------X
13
                   MODIFIED BENCH RULING ON MOTIONS
14             FOR SUMMARY JUDGMENT BEFORE THE HONORABLE
               ROBERT D. DRAIN UNITED STATES BANKRUPTCY JUDGE
15
     APPEARANCES:
16
     For the Plaintiff:        JAMES B. GLUCKSMAN, ESQ.
17                             Rattet, Pasternak Gordon Oliver LLP
                               550 Mamaroneck Avenue
18                             Suite 510
                               Harrison, NY 10528
19
     For the Intervenor:       JOHN F. GOEMAAT, ESQ.
20                             KEVIN RUSSELL, ESQ.
                                 (Telephonically)
21                             Lindabury, McCormick & Estabrook
                               Westfield, New Jersey
22
                               (Appearances continue on next page)
23


24
     Proceedings recorded by electronic sound recording,
25   transcript produced by transcription service
```

```
 1    APPEARANCES: (cont'd)                                                    2

 2    For the Defendants:        RICHARD MARKOWITZ, ESQ.
                                   (Telephonically)
 3                               Markowitz & Richman
                                 121 South Broad Street
 4                               Suite 1100
                                 Philadelphia, Pennsylvania 19107
 5

 6    Court Transcriber:         SALLY REIDY
                                 TypeWrite Word Processing Service
 7                               211 N. Milton Road
                                 Saratoga Springs, NY 12866
 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

3

        THE COURT:  All right.  Good afternoon.  We're on the

record in <u>A.C.E. Elevator Construction Company, Inc. and</u>

<u>American Manufacturers Mutual Insurance Company v. Local No. 1,</u>

<u>National Union of Elevator Constructors, et al.</u>

        As I asked my chambers to inform the parties in this

adversary proceeding, I've considered the supplemental briefing

that I requested after the hearing on the motions for summary

judgment, reviewed the record, including the transcript of that

hearing, and am prepared to rule on the motions for summary

judgment by the plaintiff, A.C.E. Elevator, and by the

defendants.  But before I go any further let me just make sure

that Mr. Markowitz, Mr. Russell, and Mr. Goemaat are all on the

phone.

        MR. RUSSELL:  Correct.  Kevin Russell, Your Honor.

        MR. MARKOWITZ:  Dick Markowitz.

        THE COURT:  Okay.

        MR. GOEMAAT:  And this is John Goemaat.

        THE COURT:  Good.  If for some reason you can't hear

me during my ruling, please don't hesitate to interrupt.  I want

to make sure that it's heard.  Secondly, before I begin I should

also say that my practice generally is to give oral rulings,

even though at times they can be quite lengthy, because I think

it's important for the parties to get a relatively prompt

result, if possible.  I do, however, have the further practice

4

of reviewing the transcript of my oral rulings and correcting
that transcript not only for typos and things that the reporter
misheard but also at times for my grammar or to add a point to
make the ruling clearer.  If I do that here beyond just
correcting typos, I'll file that corrected ruling as a separate
item on the docket.  My practice, though, is not to alter the
actual holding of the rulings.

In this case, in this adversary proceeding, as I
said, I have before me motions by both the plaintiff, A.C.E.
Elevator, and the defendants for summary judgment.  The
standard for summary judgment is clear.  It's set forth in
Federal Rule of Civil Procedure 56(c), which is made applicable
in adversary proceedings in bankruptcy cases pursuant to
Bankruptcy Rule 7056.  Under Rule 56, summary judgment shall be
granted if the pleadings, depositions, answers to
interrogatories, and admissions on file, together with
affidavits, if any, show that there is no genuine issue as to
any material fact and that the moving party is entitled to
judgment as a matter of law.  See <u>Celotex Corp. v. Catrett</u>, 477
U.S. 317, 322 (1986).

In deciding a motion for summary judgment, the court
must determine if there are any material factual issues to be
tried while at the same time, since the nonmoving party would
be precluded from a trial if the relief were granted, the court

5

should resolve ambiguities and draw reasonable inferences against the moving party.  <u>Knight v. U.S. Fire Insurance Company</u>, 804 F.2d 9,11 (2nd Cir. 1986).  The burden rests on the moving party to establish the absence of a genuine issue of material fact.  <u>Celotex</u>, 477 U.S. at 322-323.  The nonmoving party may oppose a summary judgment motion by making a showing that there's a genuine issue as to a material fact in support of a verdict or ruling for that party.  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247-48 (1986).  That is, "the mere existence of a scintilla of evidence in support of [nonmovant's] position will be insufficient.  There must be evidence on which a jury could reasonably find for the [nonmoving party]."  <u>Id</u>.  The nonmoving party may not defeat a summary judgment motion, therefore, by relying on self-serving or conclusory statements.  There must be something more than some metaphysical doubt as to a material fact; that is, there needs to be evidence of a material fact at issue, although, of course, once that evidence is shown, the court moves on to the trial stage.  The evidence need not be probative, that is, at the summary judgment stage.  See generally <u>Matsushita v. Zenith Radio Corporation</u>, 475 U.S. 574, 586 (1986).

     The motions here grow out of a set of facts that generally are agreed to -- with, however, some important areas of disagreement.  Based upon my review of the parties' Local

6

Rule 7056-1 statements as well as the pleadings, depositions and affidavits, and the exhibits on file in connection with these motions, I have concluded that in light of the genuine factual differences between the parties in respect of the issues, which I'll summarize in a moment, the motions for summary judgment should be denied in all but three respects. Let me cover those three exceptions first.

First, although it's not really couched as a summary judgment motion, as part of A.C.E. Elevator's motion it made a motion under Rule 37 for sanctions based upon the defendants' failure to provide a sufficiently knowledgeable and informed Rule 30(b)(6) witness.  For failure to comply with Rule 30(b)(6), A.C.E. has moved under Federal Rule of Civil Procedure 37 for sanctions to the extent of granting it affirmative relief and/or striking the defendants' responses.

It appears to me that by producing a 30(b)(6) witness who was neither knowledgeable nor informed of highly relevant information, the defendants in fact did not comply with the Rule. Bank of New York v. Meridian Biao Bank Tanzania, Ltd.,171 F.R.D. 135, 151 (S.D.N.Y. 1997); Smithkline Beecham Corp. V. Apotex Corp., 2000 WL 116082, at *8 (N.D. Ill. Jan 24, 2000); Marker v. Union Fidelity Life Ins. Co., 125 F.R.D. 121, 126 (M.D.N.C. 1989).

However, I conclude that the imposition of the

7

drastic sanctions requested by A.C.E. would not be appropriate given the failure of A.C.E. either at the deposition or thereafter to have sought any other form of relief, such as, for example, requesting a chambers conference with the Court or, to the extent that the defendants still disagreed with A.C.E.'s view of their noncompliance, to have the Court consider the dispute and to seek the Court's assistance in compelling the defendants to comply with Rule 30(b)(6). Instead, A.C.E. did not make any demand for compliance until the motion was filed. In light of that, and notwithstanding that the deposition occurred on the very last day of the discovery deadline (if such a request had been made, I would have promptly extended the discovery deadline to permit compliance with Rule 30(b)(6)), I find that A.C.E. has not established sufficient grounds for such severe sanctions. See, for example, Smithkline Beecham Corp. v. Apotex Corp., 2004 WL 739959 (E.D. Pa. March 23, 2004); see also Crown U.S.A., Inc. v. Pinros & Gar Corp., 1992 U.S. Dist. LEXIS 17923, at *5-*6(S.D.N.Y. Nov. 24, 1992). Therefore, plaintiff's motion for the specific sanctions that it sought in connection with the defendents' failure to comply with Rule 30(b)(6) is denied.

        I also will grant the defendants' motion for summary judgment insofar as it applies to the two Local 1 benefit funds. It is clear from my review of the record in connection

8

with this motion, as well as A.C.E.'s summary judgment motion,
that all of the issues pertaining to A.C.E.'s claims, including
for breach of the collective bargaining agreement, breach of
the automatic stay, interference with contract, and equitable
subordination, involve Local 1 but not the Local 1 benefit
funds in any of the material factual allegations with regard to
allegedly improper activity.  Consequently, it would appear
that the only basis for finding the Local 1 benefit funds to be
liable here would involve a showing, which has not been
sufficiently alleged, that the funds were acting at the behest
of and in conjunction with the Local 1 union.  Therefore,
insofar as the benefit funds are concerned, the motion of the
defendants is granted, and, of course, A.C.E.'s motion for
summary judgment is denied.

        Finally, A.C.E. contends that Local No. 1 has, by its
alleged misconduct, breached a fiduciary duty to it as a member
of the official creditors committee.  A.C.E. is incorrect that
Local No. 1 owes it a fiduciary duty as a result of service on
the official unsecured creditors committee, however. As a
member of the creditors committee, the union's only fiduciary
duty was owed to all of the unsecured creditors as a group. Pan
Am Corp. v. Delta Airlines, Inc., 175 B.R. 438, 514 (S.D.N.Y.
1994); In re Barney's, Inc., 197 B.R. 431, 441 (Bank. S.D.N.Y.
1996). Moreover, any liability therefor arises from, and is

9

solely related to, the committee member's improper, ultra-vires actions while acting on the committee, <u>Pan Am Corp. v. Delta Airlines, Inc.</u>, 175 B.R. at 514-15, and A.C.E. has not alleged any claims against Local 1 arising from any improper actions allegedly taken as a committee member or any abuse of its committee member status.  There's nothing asserted in the record before me to suggest that, as a committee member, Local 1 acted improperly or, perhaps more accurately phrased, that it acted improperly in its capacity as a committee member.  Therefore, I will grant the union's motion for summary judgment dismissing the breach of fiduciary duty claim, as well.

That leaves the summary judgment motion of A.C.E. and the reciprocal motion for summary judgment of Local No. 1, National Union of Elevator Constructors, the local collective bargaining unit.

A.C.E. Elevator asserts that Local No. 1, which I'll also refer to as the union, was responsible for an improper strike in respect of the failure of A.C.E. employees who were represented by the union to go to work after the commencement of A.C.E.'s chapter 11 case, and, in particular, their refusal to continue work at the Brooklyn Courthouse construction site covered by a contract between A.C.E. and Bovis.  In addition to claiming that Local No. 1 thereby breached the collective bargaining agreement, A.C.E. contends that, given its knowledge

10

of and the adverse effect on the Bovis contract that would occur as a result of a strike, Local No. 1 interfered with A.C.E.'s contractual rights leading directly to the termination of that contract and A.C.E.'s eventual liquidation.  A.C.E. also contends that because such strike was intended to compel A.C.E. to pay prepetition claims against it of the union and the benefit funds, the union violated the automatic stay under section 362(a) of the Bankruptcy Code in authorizing and ratifying the strike.  And, finally, A.C.E. contends that because of such misconduct, the union's claims against it should be equitably subordinated under section 510(c) of the Bankruptcy Code to the other unsecured claims against A.C.E.

A.C.E. also contends that in addition to breaching the collective bargaining agreement the union breached a post-petition agreement, reached in Court, to resolve the strike, and that this breach also (and the union's conduct in connection therewith) gives rise to a claim that should go to trial if A.C.E. does not prevail on summary judgment, and (for the same reasons) that the union's claim should be equitably subordinated for that conduct, as well.

The union contends, to the contrary, the following: first, that it did not breach the collective bargaining agreement by striking, in that it had the right unilaterally to determine that A.C.E. had previously breached the agreement and,

11

therefore, that the union was free thereafter to strike notwithstanding that agreement's "no strike" provisions. Secondly, it contends that even if the union did not have the right to strike in light of the "no strike" provisions, A.C.E. did not invoke the proper remedy of arbitration that would have entitled A.C.E. to prevent the strike.  It also contends, thirdly, that there was, in fact, no strike but, rather, that members of the union simply failed to report to work and remained not working and that their actions should not be attributable to the union.

        In addition, the union contends that, separate and apart from the foregoing questions regarding any alleged breach of the collective bargaining agreement, the union was permitted under the Norris-Laguardia Act, 129 U.S.C. Section 101, et.seq., and section 1113(f) of the Bankruptcy Code to strike over A.C.E.'s failure to pay prepetition debt and that there accordingly was no violation of the automatic stay even if there was a strike with the intention of enforcing the union's prepetition claims.  The union also contends that the Court is precluded from finding any damages for violation of the automatic stay resulting from any such strike because section 362(h) of the Bankruptcy Code applies only to individuals and there is no other available remedy to this corporate debtor for breach of the automatic stay.  It also contends that the strike

12

was caused by A.C.E.'s failure to pay postpetition, not prepetition debt.

Finally, the union contends that as far as the alleged postpetition agreement to resolve the strike is concerned, it is entitled to summary judgment because it performed its obligations under such agreement and A.C.E. did not, and that, in any event, the issue of whether any such agreement was breached is not susceptible to summary judgment in A.C.E.'s favor.

In light of all of the foregoing, the union contends that it clearly did nothing improper and, therefore, that it cannot be subjected to the equitable subordination of its claims, nor should it be held liable for interference with the Bovis contract, given, as it contends, that it had a legitimate excuse or purpose in striking or that its members' decision not to continue to work was made and pursued on their own, without the union's improper involvement.

Turning, then, to the case law relevant to the foregoing disputes, and applying it to the facts, let me first discuss the issue of whether, assuming the union fully complied with the collective bargaining agreement, the mere fact that there was a work stoppage over unpaid prepetition debt could be punished as a violation of the automatic stay under Section 362(a) of the Bankruptcy Code.  The union is correct that the

13

Court lacked  the power to enjoin it from striking

notwithstanding (assuming, for the moment A.C.E.'s factual

assertion) that such a strike here violated the automatic stay

under section 362(a) of the Bankruptcy Code.  Under the Norris-

LaGuardia Act, subject to the so-called Boys Market exception,

this Court lacks the jurisdiction to enjoin a union's strike,

even an illegal or unlawful strike, including a strike in

violation of the automatic stay. See In re Petrusch, 667 F.2d.

297, 300 (2nd Cir. 1981), cert.denied, 456 U.S. 974 (1982). See

also In re Crowe & Associates, Inc., 713 F.2d. 211, 214-16 (6th

Cir. 1983).

        The union has contended from the start of this

adversary proceeding that this conclusion should be the end of

the matter, at least insofar as A.C.E. seeks sanctions against

the union for striking in breach of the automatic stay.  I

continue to believe, however, that it is not the end of the

matter, for the following reason. As noted, the reach of the

Norris-LaGuardia Act to preclude a federal court's issuance of

an injunction of a strike applies even to so-called illegal

strikes or improper strikes.  It does not, however, leave

employers without a remedy for illegal or improper strikes -

for example, a monetary remedy in the form of damages.  See

Elsinore Shore Associates v. Local 54, Hotel Employees &

Restaurant Employees International Union, 820 F.2d. 62, 69 (3d

14

Cir. 1987).  As is made clear in the case law, such damages have been awarded in other, analogous contexts in the past. Id. See also In re A & C Electric Company, Inc. 188 B.R. 975 (Bankr. N.D. Ill. 1995), aff'd 193 B.R. 856 (N.D. Ill. 1996), which, although it does not discuss the Norris-LaGuardia Act directly, is consistent with the foregoing view, citing cases interpreting the Norris-Laguardia Act, including the Crowe Associates case and Petrusch.  In A & C Electric, the debtor did not seek an injunction of an improper or unlawful strike in violation of the automatic stay but, instead, sought damages for such a strike, and the court concluded, as affirmed by the District Court, that such damages would lie.

The damages for such a breach of the automatic stay, here, under the Second Circuit's Chateaugay case, would not be under section 362(h), which the union correctly notes applies only to individuals, but would, instead, arise under the Court's general contempt power to punish violations of the automatic stay. Maritime Asbestosis Legal Clinic v. LTV Steel Co. (In re Chateaugay Corp.), 920 F.2d. 183, 186-187 (2nd Cir. 1990).  As the case law cited by Chateaugay makes clear, when it comes to violations of the automatic stay and sanctions therefor, the necessary level of willfulness is not particularly high, moreover. In this context, it merely must be shown that the alleged violator had knowledge of the bankruptcy case and the

15

existence of the automatic stay, and I believe that under this record that knowledge on the union's part is clear, particularly after the Court warned the union's counsel of that risk.

It is not, however, clear that the failure of the employees to return to work was in fact (a) done solely to collect on prepetition debt, and, therefore, in fact a violation of the automatic stay, or (b), as I'll discuss in a moment, necessarily attributable to the union.  The issue of whether the work stoppage and, more particularly, the failure to return to work before the termination of the Bovis contract was attributable to an effort to collect prepetition debt or, instead, postpetition amounts owed by A.C.E. -- that issue, I believe, is not resolvable on summary judgment in favor of either party based on the record before me, including the bankruptcy hearing transcript references and the clear efforts by the debtor to arrange for payment of its postpetition obligations after the March 2 hearing during which the parties appeared to reach agreement on what it would take to end, or at least put the union in a position to end, the work stoppage. A.C.E.'s motion for summary judgment on this issue, therefore, the issue of violation of the automatic stay, is denied because of the remaining material disputed factual issue of whether the failure to return to work was, in an underlying sense, an action to collect on a prepetition debt, or, rather, to enforce

16

a postpetition breach of the collective bargaining agreement, and secondly, whether the failure to return to work was one that can be charged under the applicable law to the union, as opposed to the union workers, as I will discuss below.

Before moving on to the remaining issues, however, I should note that the union has taken the position that although it alleges it was endeavoring only to get its workers paid the postpetition obligations that were owed to them, it had a right to full payment of the prepetition obligations, as well, and, therefore, that the automatic stay would not apply to the union even if, in fact, it was really trying to collect on pre-petition obligations (notwithstanding the fact that the debtor was statutorily precluded under the Bankruptcy Code from paying such prepetition obligations absent approval by the Court, which the debtor never obtained). Based on my review and understanding of In re Ionosphere Clubs, Inc., 22 F.3d. 403 (2nd Cir. 1994), I conclude, however, that notwithstainding section 1113(f) of the Bankruptcy Code, upon which the union relies for this argument, A.C.E. was not required, and was in fact prohibited, by the Bankruptcy Code from paying its prepetition obligations in full in cash absent Court approval. Therefore, an attempt to force such payment, if in fact that's what the attempt was, by the union, in derogation of the Bankruptcy Code's priority scheme, was precluded by the Code,

17

and, therefore, improper, including under section 1113(f).
Therefore, the union would not be excused by section 1113(f)
from forcing such a payment.

As I noted, the union has also contended, among its
arguments, that it should not be charged with any actions that
its members took not to go back to work, because the decision
not to work was the members' own and the union should not be
penalized for their actions.  In support of that contention, it
has submitted several affidavits by members of the union
describing their decision not to return to work for A.C.E.
after the bankruptcy petition date as being entirely their
choice and without any influence from or persuasion by the
union.  This factual assertion, the union contends, the debtor
has not rebutted in any way, as would have been required by
<u>Matsushita</u> and the other cases that I have cited setting forth
the standards for summary judgment.

To evaluate that contention, one must first come to
grips with the case law regarding whether and under what
circumstances a union can be held legally responsible for the
wildcat actions of its members.  This was the issue that I
asked the parties to submit supplemental briefs on, which they
have done.  It is an issue where the applicable standard is
still not entirely free from doubt but one that I nonetheless
feel reasonably comfortable in articulating.

18

For many years following <u>United States v.</u>
<u>International Union United Mine Workers of America</u>, 77 F.Supp.
563 (D.C. Cir. 1948), the federal courts have employed the so-
called "mass action" doctrine, which in essence means that
under certain circumstances the assertion by a union that it is
not responsible for the actions of its members is simply not
credible and that a union can, therefore, be held accountable
for the illegal or improper actions of its members in breach of
a collective bargaining agreement or statute.  In <u>Carbon Fuel</u>
<u>v. United Mine Workers</u>, 444 U.S. 212 (1979), and <u>Complete Auto</u>
<u>Transit, Inc. v. Reis</u>, 451 U.S. 401 (1980), the Supreme Court
cast considerable doubt upon the "mass action" concept,
however. Clearly in those cases the Supreme Court found the
doctrine did not apply to national or international unions with
respect to wildcat actions by members of locals not under their
practical control, although the issue of whether the mass
action concept could apply to local unions was not addressed
specifically.  In those cases, however, the Supreme Court did
not absolve unions under all circumstances of liability for the
actions of their members. Instead, the Court reaffirmed the
applicability of agency principles to determine whether and
when a union would be held liable for the allegedly wildcat
actions of its members.  That being said, the circuits have
split since then as to the applicability of the mass action

19

concept to local unions.  <u>Compare</u> <u>Consolidation Coal Co. v.</u>
<u>Local, 2216 United Mine Workers</u>, 779 F.2d 1274 (7th Cir. 1985),
<u>with</u> <u>Consolidation Coal Company v. Local 1702 United Mine</u>
<u>Workers of America</u>, 709 F.2d. 882 (4th Cir. 1983), <u>cert.denied</u>,
464 U.S. 993 (1983). At least one case from the Southern
District of New York has applied the mass action concept to a
union local after both of the Supreme Court cases that I've
cited. See <u>New York Times Co. v. Newspaper & Mail Deliverers</u>
<u>Union of New York and Vicinity</u>, 1992 U.S. Dist. LEXIS 6738
(S.D.N.Y. May 12, 1992).

     Having reviewed the cases, however, it appears to me
that the distinction between the mass action doctrine and
agency principles, when properly viewed, is minor, at most.
And I say that notwithstanding that certain cases, with which I
disagree, apparently view the mass action doctrine as a very
strong presumption in favor of imputing members' actions to the
union.  See, for example, <u>Eastern Associated Coal Corp. v.</u>
<u>Local 781, United Mine Workers of America</u>, 1999 U.S. App. LEXIS
103 (4th Cir. Jan. 6, 1999).  Ultimately it appears to me that
under <u>both</u> the mass action doctrine and the agency principles
articulated by the Supreme Court, I should look at the facts at
hand to determine, in light of the actions that the employees
and the union took, or failed to take, whether the union had
responsibility for or ratified the work stoppage.  This is

20

because even in those circuits where the mass action doctrine does not apply, it appears that the courts will inquire whether the union took "foreseeably ineffective" steps to correct an unauthorized work stoppage or an illegal work stoppage, and in so doing will examine the practical effect of the union's actions or inaction on the continuation of an improper work stoppage.

For example, in the Consolidation Coal Company case from the Seventh Circuit that I cited previously, 779 F.2d 1274, the court considered that it was quite relevant that no union official worked during the unauthorized dispute, that no union official attempted to lead the members back to work, that no communication program was implemented by the union through the media to tell union members to return to work, and that union disciplinary action against nonworking members was apparently not considered.  Notwithstanding those facts, the District Court had granted summary judgment in favor of the union based on the conclusion that, under an agency theory, there was not enough to attribute responsibility to the union for the members' work stoppage.  While agreeing with the District Court that the "mass action" doctrine should not apply, the Seventh Circuit, however, remanded to the District Court to consider whether, in light of such factors and other factors that would be brought out in the record, the union

21

would be liable or responsible for the continued work stoppage on an agency theory.

Such factors, or the same types of factors, were considered by the Fourth Circuit in applying common law agency theory, as well as the mass action doctrine, in the Consolidation Coal Company case found at 709 F.2d. 882.  And in that case, based on the record, the Fourth Circuit concluded that the long list of actions that were not taken by the union showed that the union, which still, of course, was the recognized collective bargaining unit and, therefore, had power over its members, did not try to effectively exert such power and, therefore, could be found to be responsible.  Similarly, in the New York Times case, found at 1992 U.S. Dist. LEXIS 6738, Judge Leval concluded that the union's active involvement and lack of maintaining discipline (that is, the union did not try effectively to maintain discipline, rather than was ineffective in trying to maintain discipline) would give rise to liability under either the agency approach or the mass action approach.  See also Danielson v. United Seafood Workers Smoked Fish & Cannery Union, 405 F.Supp. 396 (S.D.N.Y. 1975), in which Judge Carter also looked at the same types of factors under both mass action and agency principles.

It therefore seems that as long as the union under the facts in the record could be said to have encouraged, supported

or otherwise ratified an improper or illegal work stoppage, the union would be held responsible for it, and that ratification may be inferred if the Local's leadership failed to take serious measures to get its members back on the job.

Turning, then, to the facts as alleged by A.C.E. and the union, notwithstanding certain statements in the affidavits of union members that were submitted to the effect that the members made the decision to cease work on their own volition, it is clear from those affidavits themselves that two union representatives were present at the session in the restaurant where the union workers decided not to go back to work, and that in conjunction with those two individuals, the employees chose not to go into work that first day of the stoppage but, instead, to wait and see how the discussions between A.C.E.'s representatives and those two union representatives played out. Moreover, the debtor has correctly pointed out that the union appeared through counsel in this case from the inception of the case and throughout the work stoppage and that the union undertook, through its counsel, to address the issue of the work stoppage and the union's rights in regard thereto including to negotiate an agreement, the details of which I'll discuss in a moment, pursuant to which, if certain postpetition obligations were paid, the union would use its best efforts to get the men back to work, but did not otherwise take actions to

23

end the work stoppage. Given that union involvement, it
appears, although it is not free from material dispute, that
the members of the union who ceased work for A.C.E. may well
have done so with the encouragement, support or ratification of
union representatives both at the specific time when they first
ceased work as well as, through the union's counsel and
president, during the subsequent course of the bankruptcy case.
Therefore, given the material factual issue of whether the
union made any attempt to effectively get the members to return
to work, it appears to me that the union has not prevailed on
its motion for summary judgment on the theory that it was not
responsible for the actions of its members.  At the same time,
given that it appears at least quite possible that the union
was engaged in good faith negotiations with the debtor to
obtain money for <u>postpetition</u> obligations owing to it (which it
was clearly entitled to do under the Bankruptcy Code), so as to
have a practical basis to persuade the men to return to work,
I'm not prepared to say that the union, under either a mass
action or agency theory, is definitively responsible for the
improper actions of the members.  And so, therefore, A.C.E.'s
motion for summary judgment in respect of imputing the workers'
allegedly improper actions to the union is also denied.

        As I noted, the union also contends that if in fact
it is responsible for the work stoppage, as alleged by A.C.E.,

24

that work stoppage was entirely authorized and appropriate under the parties' agreements and applicable non-bankruptcy law (in addition to Bankruptcy Code section 1113(f) and the Norris-Laguardia Act, which I have already addressed).  The union does so on two grounds.  First, it contends that notwithstanding Section 10 of the collective bargaining agreement, which provides that "it is agreed by both parties to this agreement that so long as the provisions herein contained are conformed to there shall be no lockouts or strikes, including concerted refusals to work overtime," that it had the right to strike. This argument itself is twofold.  First, the union contends that there was an unwritten exception to the foregoing no-strike provision arising upon an employer's failure to pay benefits such as the failure here to pay pre-petition benefits by A.C.E.  The factual basis for that contention is a declaration submitted by the former agent of the employers' association that is a party to the national collective bargaining agreement (which agreement contains an express exception to the no-strike provision, for the failure to pay benefits), who contends that a course of dealing between the parties reflects such an unwritten agreement to permit strikes at the local level under such circumstances.  Therefore, the union contends, given A.C.E.'s failure to pay such benefits, the strike was authorized.

25

I do not accept this argument, however, given the
plain language that I have quoted of the pertinent contract,
the <u>local</u> collective bargaining agreement (which does not
contain the exception that appears in the national agreement),
and which, in addition, contains an integration provision.  It's
long been the rule in New York that general custom or usage or
course of dealing may not be used to alter or vary or
contradict the unambiguous contractual provisions that the
parties have agreed to, and that, in fact, such testimony is
barred.  I believe that should be the case here,  See <u>Michael
J. Torpe Inc. v. Consolidated Edison Company of New York</u>, 99
A.D.2d 484, (App. Div. 2nd Dep't. 1984); <u>Albany Discount
Corporation v. Antoinette Basile</u>, 32 A.D.2d 723 (App. Div. 3d
Dep't. 1969).

Secondly, the union contends that it has the
<u>unilateral</u> right to conclude that the employer has not
"conformed" to the provisions of the collective bargaining
agreement and therefore that it was free under Section 10 of
the agreement to strike.  Here, however, the collective
bargaining agreement also contains an arbitration provision, in
Section 8, providing for "arbitration of disputes concerning the
interpretation or application of any provisions of this
agreement," except for disputes that are here irrelevant.  In
light of such provision, the issue before me is not whether in

26

fact the union was correct in its belief that A.C.E. was in breach of the agreement and therefore that the union had the right to strike, but, rather, whether the issue was properly the subject of arbitration.  See, for example, Amalgamated Local No. 55 v. Metal & Alloy Division of Silver Creek Precision Corp., 396 F.Supp. 667 (W.D.N.Y. 1975), which discusses at length the Steelworkers trilogy of cases issued by the Supreme Court on the subject of arbitration in connection with collective bargaining agreement disputes.  See also Allied Division of Delaware Contractors Association, Inc. v. International Union of Operating Engineers, 351 F.Supp. 568, 571 (D. Del. 1972), aff'd 485 F.2d 678 (3d Cir. 1973); and Elevator Manufacturers Association of New York v. International Union of Elevator Constructors Local 1, 331 F.Supp. 165 (S.D.N.Y. 1971), all of which held that the court is not supposed to look into the merits of the underlying dispute (or, more accurately, whether the union's unilateral determination of that dispute was, in retrospect, correct) but, rather, whether the dispute was properly arbitrable, and, in addition, that if the dispute was properly subject to arbitration the union should not have acted unilaterally. I conclude that this dispute was properly the subject of arbitration under the collective bargaining agreement.

Lastly, the union responds by contending that, in

27

essence, the debtor waived its right to arbitration given that
it did not actually seek arbitration but, rather, was acting in
the bankruptcy court to resolve the matter.  It's clear that one
may waive a right to arbitration by not timely asserting it;
however, it is equally clear that one does not need necessarily
to demand arbitration before a court could enjoin, under Boys
Market, improper action in contravention of an arbitration
provision and, moreover, that the circumstances must be looked
at carefully by the court before it finds a waiver in this
context.  See, for example, Jones Motor Co., Inc. v.
Chauffeurs, Teamsters & Helpers Local Union No. 633, 671 F.2d
38 (1st Cir. 1982), cert. denied, 459 U.S. 943 (1982), as well
as United Parcel Service New York, Inc. v. International
Brotherhood of Teamsters, 698 F.2d 100,106,109 (2nd Cir. 1983).
 Here, I don't believe that A.C.E. waived its rights under
Section 8, particularly in light of two facts.  First, it was
in a bankruptcy case where ultimately both it and the union
were attempting to resolve the underlying dispute consensually
through the auspices of the Court as reflected in the
transcripts of the hearings that are attached as exhibits (in
particular the March 2nd, 2005 transcript), and, secondly, by
the fact that the debtor tried to implement that settlement on
the very eve of the potential termination of the Bovis contract
and the union, as I'll discuss in a moment, did not accept the

consideration offered by the debtor and did nothing to pull the workers back to work literally on the day Bovis terminated its contract with A.C.E. on the basis that the workers were still not back at work.  Given that tight timetable and, further, given the foregoing apparently good faith efforts by A.C.E., I cannot find a waiver stemming from A.C.E.'s not having sought arbitration. I also believe there's a material factual issue, however, regarding whether A.C.E. complied with the postpetition agreement by tendering the payment it did, or, to the contrary, whether the union was within its rights to reject that payment.

Therefore, it appears to me that -- leaving aside the factual issue of whether A.C.E. did not comply with the terms of the agreement reached as a result of the hearing on March 2nd (or, instead, whether the union breached that agreement)-- the failure of the union to prohibit the strike (if, in fact, the union could be said to have prohibited it as opposed to the men doing it on their own) during the short time between A.C.E.'s making the negotiated payments or attempting to make them and the termination of the Bovis contract, could but not necessarily must  be viewed as a breach.  As is apparent probably from what I've just said, I cannot find, therefore, for either the union or A.C.E. as to whether, in fact, A.C.E., on the one hand, or the union, on the other, breached the

29

postpetition agreement reached at the March 2nd hearing to try
to resolve the work stoppage.  And, as I noted previously, I
cannot find for either the union or A.C.E. as to whether the
union's not causing the workers to go back to work prior to the
termination of the Bovis agreement is attributable to the union
or, instead, is something that properly should be viewed as
solely the responsibility of the workers.  So, therefore,
summary judgment on both motions should be denied with regard
to the breach issue.

In light of that fact, summary judgment obviously
also has to be denied on both sides' motions with regard to
equitable subordination.  It will require a trial to determine
whether, in fact, the union was responsible for the conduct of
the workers and whether, in fact, that conduct was sufficiently
improper to warrant equitable subordination of the union's
claims as well as, of course, a finding as to any damages to
creditors resulting from such conduct, both of which must be
found for equitable subordination to lie.  In re 80 Nassau
Assocs., 169 B.R. 832, 837-40 (Bankr. S.D.N.Y. 1994).

For the same reasons, although it's clear to me that
(a) there was a contract between A.C.E. and Bovis, (b) the
union knew of the existence of that contract and the near
certainty that Bovis would terminate it if the work stoppage
continued, and (c) there were damages resulting from the

30

termination of that contract, it is not clear whether the union

(d) was excused, or, to the contrary, acted wrongfully, in

respect of the termination of work or the work stoppage that

interfered with the performance of the contract. Therefore, I

cannot find today either for the debtor or the union as to

whether the union is liable or, to the contrary, free from

liability for tortious interference with the Bovis contract.

Kronos, Inc. v. AVX Corp., 81 N.Y.2d 90, 94 (1993); In re

Chateaugay Corp., 139 B.R. 598, 607-08 (Bankr. S.D.N.Y. 1992).

Consequently, except as I've previously ruled, the

parties must establish their causes of action, in the case of

A.C.E., and their defenses, in the case of the union, at trial,

and, in particular (again with regard to the degree of

involvement of the union), especially with respect to the

critical period from the date that the parties agreed to

payment of the postpetition liabilities at the beginning of

March 2005 and the termination of the Bovis contract because

the union workers still did not return to work.

So, Mr. Glucksman, you should submit an order,

actually two orders: one on your motion and one on the union's

motion, consistent with my ruling.

31